FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 1 6 2016

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBIN D. STROTHER and
GAIL J. CRAMER,

    Plaintiffs,

v.                                     No. 15-CV-38 MCA/CG

KATHY L. STEELE,

    Defendant/Counterclaimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court *on Defendant's Motion for Judgment on the Pleadings*. [Doc. 40, 41] The Court has considered the parties' submissions, the relevant law, and the record, and has otherwise been fully advised in the premises.

## BACKGROUND

This lawsuit arises from a dispute over the Ralph L. Strother & Ruth L. Strother Living Trust (the Trust) —primarily raising the issue of the time period during which Defendant, Steele, a beneficiary of the Trust, is entitled to an accounting of the Trust from Plaintiffs, who are the Trustees. [Doc. 1, 11, 41, 44, 46] The following background facts are undisputed.

Mr. and Mrs. Strother (the Strothers) created the Trust in New Mexico in 1993, and amended the Trust document on October 22, 1999. [Doc. 1 ¶¶ 1, 5] Pursuant to the 1999 amendment, the Strothers, along with two of their three children, Robin Strother

1

and Gail Cramer (hereinafter "Siblings") were designated as the trustees. [Doc 1 ¶ 6; Doc. 2 (First Amendment)] Mr. Strother died in November 1999. [Doc. 1 ¶ 7] Mr. Strother's death triggered a provision in the Trust that required the Trust to be divided into two separate trusts, respectively called "Trust 1" and "Trust 2." [Doc. 1 ¶ 8, Doc. 2 ¶ VI] The Trust documents designated Mrs. Strother and Siblings trustees of Trust 1 and Trust 2. [Doc. 2 (First Amendment), ¶ IV]

According to the terms of the Trust, Trust 1 was to comprise 43.3% of the Trust, and Trust 2 was to comprise 56.7% of the Trust; the trustees were granted the authority to distribute assets from the Trust to Trust 1 and Trust 2 to accomplish this allocation. [Doc. 1 ¶ 8] Trust 1 was irrevocable and unamendable; Trust 2 was revocable and amendable by Mrs. Strother, provided that she was not incapacitated. [Doc 1 ¶ 8; Doc. 2 ¶ 10.3; Doc. 11 ¶ 5]

In a clause titled "Accounting," the Trust provides that: "The Successor Trustees shall render at least semi-annually an account of income and principal, including a statement of all receipts, disbursements and capital changes, to settlors or, after their death, to beneficiaries." [Doc. 1 ¶ 14; Doc. 2 ¶ 9.1; Doc. 11 ¶ 4] The Trust further provides that within "a reasonable time" after Mrs. Strother's death Trust 1 and Trust 2 are to be finally distributed outright in equal shares to the Strothers' Children (Siblings and Steele). [Doc. 1 ¶ 11, Doc. 2 ¶ 7.1] Mrs. Strother died on November 13, 2013. [Doc. 1 ¶ 10]

Siblings and Steele have had and continue to have an adversarial relationship. [Doc. 1 ¶ 13] Steele has repeatedly demanded information and documents relating to

accounting and distributions of the Trust. [Doc. 1 ¶ 13; Doc. 11 ¶ 8] Steele has refused to accept a final distribution of the Trust's funds and she has opposed a final distribution to Siblings. [Doc. 1 ¶ 13] A major point of contention between the parties is whether, and for what period, Steele is entitled to information relating to the accounting of Trust 1 and Trust 2. [Doc. 1 ¶ 13]

Siblings filed the present lawsuit seeking, among other things, a declaratory judgment and order directing that Siblings prepare an accounting and trustee's report pertaining to Trust 1 and Trust 2 limited to the period commencing on the date of Mrs. Strother's death and ending on the date of the Court's final order, and approving the final distribution of Trust 1 and Trust 2 to Siblings and Steele in equal shares. [Doc. 1 ¶ 21 (A, B)] Steele filed a counterclaim seeking, among other things, an order requiring Siblings to provide her with: a full report or accounting of Trust 1 from the date of Mr. Strother's death; a full report or accounting of Trust 2 from the time that Mrs. Strother became incapacitated, which Steele alleges was no later than January 2005, and "any and all documents" from Mr. Strother's death to the present containing the material facts necessary for Steele to protect her interests in the Trust. [Doc. 11 p. 10 (¶¶ 1-3)]

Presently at issue is *Defendant's Motion for Judgment on the Pleadings* in which Steele seeks an order requiring Siblings to provide "accountings of Trust 1 and Trust 2 from October 22, 1999 [the date on which they became trustees of the Trust], until any such accountings are completed." [Doc. 40, 41 p. 12]

3

## ANALYSIS

In ruling on a motion for judgment on the pleadings, the Court applies the same standard that applies to a Rule 12(b)(6) motion. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). The Court accepts all facts pleaded by the non-movant as true and grants all reasonable inferences from the pleadings in favor of the non-movant. *Id.* "A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.*

### *Relevant Trust Law*

In 2003 the New Mexico Legislature implemented the Uniform Trust Code (the UTC), NMSA 1978, Sections 46A-1-101 to -1105 (2003, as amended through 2012). Except as otherwise provided, the UTC "applies to all trusts created before . . . its effective date." *Id.* § 46A-11-1104(A)(1). According to the UTC, "[t]he common law of trusts and principles of equity supplement the UTC, except to the extent modified by [the UTC] or another [New Mexico] statute." *Id.* § 46A-1-106.

### *Trust 1*

Subject to certain exceptions, the terms of a trust govern the duties and powers of a trustee and the rights and interests of a beneficiary. *Id.* § 46A-1-105(A). One such exception, of relevance here, pertains to the duty of a trustee of an irrevocable trust to

4

respond to the request of a qualified beneficiary for reports[1] and other information reasonably related to the administration of the trust. *See* § 46(A)-1-105(B)(9) ("The terms of a trust prevail over any provision of the [UTC] except . . . the duty under [Section 46A-8-813(A)] to respond to the request of a qualified beneficiary of an irrevocable trust for a trustee's reports and other information reasonably related to the administration of a trust[.]"). The trustee's duty to respond to a beneficiary's request for information is described in Section 46A-8-813(A), which requires a trustee to "keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests"; and requires the trustee to "promptly respond to a beneficiary's request for information related to the administration of the trust."

Section 46(A)-1-105(B)(9), prohibiting the terms of a trust from overriding the duty enumerated in Section 46(A)-813(A), reflects the common law principles that (1) a trustee is under a duty to the beneficiary to keep and render clear and accurate accounts with respect to the administration of the trust; (2) that "[t]he trustee is under a duty to the beneficiary to give him, upon his request at reasonable times, complete and accurate information as to the nature and amount of the trust property"; and that (3) "[a]lthough the terms of the trust may regulate the amount of information which the trustee must give and the frequency with which it must be given, the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust

---

[1] The UTC uses the term "report" instead of the term "accounting" to describe the information that a trustee is required to provide to beneficiaries about the trust[.] 17 Alan Newman *et al.*, *The Law of Trusts and Trustees*, 81 n.3 (3d ed. 2010).

5

or to prevent or redress a breach of trust." Restatement (Second) of Trusts §§172, 173 cmt. c (Am. Law Inst. 1959). Further, "[t]he majority of jurisdictions adhere to the rule that a vested remainderman has the right to an accounting" even where "the terms of the trust do not provide for such an accounting." *Shriners Hosps. for Crippled Children v. Smith*, 385 S.E.2d 617, 618-19 (Va. 1989) (holding that "the benefit [that] the vested remainderman will receive in knowing the status of the trust assets far outweighs any burden on the trustee to provide the accounting").

In support of her motion for judgment on the pleadings, Steele argues that as a vested beneficiary of Trust 1, she has the right to a full accounting of Trust 1 as a matter of law. [Doc. 41 p. 5] There is no dispute that Steele was a vested remainderman beneficiary of Trust 1 upon Mr. Strother's death. [Doc. 1 ¶ 9; Doc. 11 ¶ 6] Steele's purpose in seeking an accounting is to protect her interest in Trust 1. [Doc. 11 p. 9-10] As a matter of law, Steele is clearly entitled to an accounting of Trust 1 to accomplish that purpose. Section 46(A)-1-105(B)(9); Section 46A-8-813(A); Restatement (Second) of Trusts §§ 172, 173 cmt. c.

In response to Steele's argument that she is entitled, as a matter of law, to an accounting of Trust 1, Siblings argue that pursuant to the "Accounting" clause in the Trust, they were required to account only to the settlor, Mrs. Strother, and that Steele was "only . . . entitled to an accounting" after Mrs. Strother's death. [Doc. 44 p. 4] Siblings argue, further, that because the Trust preceded the UTC, the UTC's provision requiring trustees to provide beneficiaries with information regarding an irrevocable trust cannot override the terms of the Trust in which the settlors' intention was clear—that during the

6

lifetime of a settlor, the trustees' duty to provide an accounting was owed exclusively to the settlor. [Doc. 44 p. 7-10] In support of their arguments, Siblings rely, in part, on Section 46A-11-1104(A) (3) and (4). Neither of these subsections applies. [Doc. 44 p. 8-9]

Section 46A-11-1104(A)(3) addresses the UTC's applicability in judicial proceedings that were commenced prior to the effective date of the UTC. *See id.* (stating that the UTC "applies to judicial proceedings concerning trusts commenced before its effective date, unless the court finds that application of a particular provision of the [UTC] . . . would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision of the [UTC] . . . does not apply and the superseded law applies"). Since the present lawsuit was commenced approximately twelve years after the effective date of the UTC, Section 46A-11-1104(A)(3) pertaining to "judicial proceedings . . . commenced before [the] effective date" of the UTC has no bearing on the present lawsuit.

Section 46A-11-1104(A)(4) provides that the rules of construction and presumptions stated in the UTC apply to trusts that were executed prior to the effective date of the UTC "unless there is a clear indication of a contrary intent in the terms of the trust"; the "rules of construction" in the UTC are governed by Section 46A-1-112. *See* § 46A-1-112 (stating that "[t]he rules of construction that apply in [New Mexico] to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property."). Since the issue presently before the Court does not concern a term in the Trust governing how its

7

terms are to be construed or what presumptions apply in construing its terms, Siblings do not demonstrate a conflict between a Trust term and the "rules of construction" provided in Section 46A-1-112. Accordingly, the Court concludes that Section 46A-1-1104(A)(4) does not apply here.

Siblings also argue that the UTC's requirement that trustees provide beneficiaries of irrevocable trusts information that is necessary to protect their interests in the trust cannot be applied to Trust 1 because it directly contravenes the terms of the Trust contained in the "Accounting" clause. [Doc. 44 p. 9-10] This argument is not supported by the terms in the Trust. As noted earlier, the "Accounting" clause of the Trust provides that the Successor Trustees (Siblings) "shall render at least semi-annually an account of income and principal . . . to settlors or after their death to beneficiaries." [Doc. 2 ¶ 9.1] While this provision of the Trust affirmatively requires Siblings to render a semi-annual account as directed, it does not prohibit Siblings from providing information regarding the Trust to a vested beneficiary at any time. Nor does it limit a vested beneficiary's entitlement to receive information regarding the Trust.

Furthermore, while the Trust does not purport to prohibit Steele from receiving information about Trust 1, even were the Trust to contain such a prohibition, such a term would be ineffective under the UTC and as a matter of common law. Section 46A-11-1104(A)(1) provides that the UTC "applies to all trusts created before, on or after its effective date[.]" Section 46A-1-105(B)(9) provides that the UTC prevails over any term of a trust that purports to eliminate the duty to respond to the request of a qualified beneficiary of an irrevocable trust for a trustee's reports and other information

8

reasonably related to the administration of the trust. Even were the Court to assume, hypothetically, that the UTC did not govern the Trust, Siblings would nevertheless be required, as a matter of common law, to provide Steele with the information that she seeks. *Shriners Hosps. for Crippled Children,* 385 S.E.2d at 618-19 ("The majority of jurisdictions adhere to the rule that a vested remainderman has the right to an accounting" regardless of the terms of the trust); Restatement (Second) of Trusts §173 cmt. c ("Although the terms of the trust may regulate the amount of information which the trustee must give and the frequency with which it must be given, the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust."). Accordingly, the as to Trust 1, the Court concludes that Steele is clearly entitled to an accounting as a matter of law.

### *Trust 2*

Section 46A-6-603(A) provides that "[w]hile a trust is revocable and the settlor has capacity to revoke the trust, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor." As a general rule, the contingent beneficiary of a revocable trust is not entitled to an accounting of the trust for periods during which the settlor is alive and able to revoke the trust. Newman *et al.*, *supra*, at 103-04; *In re Malasky,* 290 A.D.2d 631, 632 (N.Y. App. Div. 2002) (holding that where the settlors acted as trustees and "explicitly retained the power to revoke or amend the trust at any time[,]" the remaindermen beneficiaries had no interest in, and therefore no right to, an account of the trust during the settlor's lifetime); *Evangelho v.*

9

*Presoto*, 67 Cal. App.4th 615, 624 (Cal. Ct. App. 1998) ("During the time the person holding the power to revoke is competent or alive, a trustee has no duty to account to contingent beneficiaries for the period when the trust may be revoked."). However, under some circumstances, for example, where the beneficiary shows that the trustee committed fraud or acted in bad faith; or that "the trustee breached its duty during the settlor's lifetime and that the settlor had lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct" the trustee of a revocable trust may be required to account for the trust during the settlor's lifetime. Newman, *et al.*, *supra* at 105; *Evangelho*, 67 Cal. App.4th at 624 ("The matter of determining the appropriate equitable relief to be granted to a beneficiary is generally left to the good judgment of the trial court.").

The parties do not dispute that while Mrs. Strother was alive and not incapacitated, Trust 2 was revocable and amendable by her. [Doc. 11 ¶ 5; Doc. 2 ¶¶ 6.4.1, 10.3] Whether, and if so when, Mrs. Strother became incapacitated during her lifetime is the subject of a factual dispute between the parties. [Doc. 11 ¶ 23; Doc. 13 ¶ 23; Doc. 44 p. 15]

As a matter of both statutory and common law, Steele is not entitled to an accounting of the trust during the period that Mrs. Strother was alive and possessed capacity to revoke or amend Trust 2. *See* § 46A-6-603(A) (providing that "[w]hile a trust is revocable and the settlor has capacity to revoke the trust, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor"); § 46(A)-1-105(B)(9) (stating that the duty, notwithstanding the terms of the

trust, under Section 46A-8-813(A) to respond to the request of a beneficiary applies to an *irrevocable* trust). Newman *et al.*, *supra*, at 103-04 (stating the general rule, that the contingent beneficiary of a revocable trust is not entitled to an accounting of the trust for periods during which the settlor is alive and able to revoke the trust) ; *In re Malasky*, 290 A.D.2d at 632 (same); *Evangelho* 67 Cal. App.4th at 624 (same).

Steele argues that Mrs. Strother became incapacitated in 2005. [Doc. 41 ¶¶ 18-21, p. 11] Siblings argue Steele cannot prove that Mrs. Strother ever lacked capacity. [Doc. 44 p. 15] Whether and if so, for what period of time Steele may be entitled to an accounting of Trust 2 during Mrs. Strother's lifetime depends upon whether Mrs. Strother became incapacitated. *See e.g.*, Newman, *et al.*, *supra* at 105 (stating that where it is shown that "the trustee breached its duty during the settlor's lifetime and that the settlor had lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct" the trustee of a revocable trust may be required to account for the trust during the settlor's lifetime); *Evangelho*, 67 Cal. App.4th at 624 ("The matter of determining the appropriate equitable relief to be granted to a beneficiary is generally left to the good judgment of the trial court."). To the extent that further factual development may reveal that Steele is entitled to an accounting of Trust 2 during Mrs. Strother's lifetime, the Court will rule accordingly.

## CONCLUSION

For the foregoing reasons Defendant's Motion will be granted.

**IT IS THEREFORE HEREBY ORDERED** that *Defendant's Motion for Judgment on the Pleadings* is **GRANTED** as to Trust 1; and **DENIED** as to Trust 2.

**SO ORDERED** this 16th day of February, 2016 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge